# Exhibit A

August 16, 2017

Shawn Woodward 00A6563
Livingston Correctional Facility
P.O.Box 91
Sonyea, New York 14556

Christopher L.Boyd, Assistant attorney General
350 Main Street suite 300A
Buffalo, New York 14202

RE: Woodward v. Holtzman, et al, Case No.16-cv-1023(F)
    Your Recent Response To My Discovery Request



RECEIVED
AUG 23 2017
Buffalo Regional Office
NYS Office of the Attorney General

Dear Mr.Boyd,

    This letter is intended to avoid motion practice regarding your inadequate discovery responses. I will address each of your responses seperately and if needed I will point out where you went wrong and/or provide clarification on exactly what I want.

1. **Request No.1:** You objected to this request because you beleive that the documents sought are outside of the time period relevant to this lasuit. **Response:** The Urinalysis Test forms that I requested are relevant to the time period and to my causes of action. specifically, towards Defendant Holtzman ("Holtzman") who alleges "...During Ramadan I...put him in for a urinalysis test..." (**Bates 000029**) On June 9, 2016 I wrote a grievance regarding me being ordered to leave the mosque before I was allowed to break my fast and pray in congregational prayer. Additionally, I was told that the sooner I urinate the sooner I could get my meal (**Bates 000071-000074**). Because Holtzman put me in for the urinalysis as she claims that means that she would have been a party to my grievance. Also because the officer performing the urinalysis test on June 9, 2016 was Defenant Donley that would have also made him a party to my grievance (**Bates 000079-000080**). In my lawsuit i allege that Holtzman, Donley and Defendant Rice ("Rice") retaliated against me because of these grievances by refusing to allow me to receive a bottom bunk (Holtzman) and conspiring to have me confined to special housing unit ("SHU") based on a false misbehavior report ("MBR"). You only provided me with the Form 2082 with respects to the urinalysis test I was ordered to perform on June 9 and July 9, 2016. There were other Form 2082 and all of them relate to the claims in my lawsuit especially since Holtzman alleges that she put me in for a urinalysis test more than once (**Bates 000029**).

2. **Request No.4:** Palintiff did not request a copy of Orleans Correctional Facility ("OCF") housing E-Dorm 2's Frisk Log Book. Plaintiff specifically requested a copy of all Cube/Property Inspection Forms which shows the name, din number, date and bed location of every inmate who was assigned to housing dorm E-2 and/or every inmate that was housed in Housing Dorm E-2 and had their bed swithed to another cube (i.e., an inmate may have been in housing bed #29 cube and then was switched to housing bed #50). The relevancy of these documents is to show that because

to show that other inmates admitted to OCF's housing dorm E-1 were allowed to receive bottlebunks without having a need for it (i.e., sercurity, medical reasons, etc), but because of Plaintiff's June 9, 2016 grievance/letter of complaint. Holtzman intentionally refused to allow Plainitt to receive a bottom bunk.

3. **Request No.7:** As mentioned in Plaintiff's complaint in retaliation for past grievances (Dkt #1; **Bates 000014, 000017, 000029, 000036-000038, etc**) Plaintiff was ordered to provide a urine sample on July 9, 1016 at 10:30am (**Bates 000044**). At 10:47am Plaintiff provided the urine (**.id**) at 11:09am the urine was allegedly tested (**.id**). At 11:34am it was allegedly tested again (**.id**). At approimately 11:15am-11:30am Plaintiff was placed in SHU (**Bates 000020-000021; 000037-000038**). Prior to Plaintiff being placed in SHU Inmate Hines of OCF's housing dorm E-1-6 (who din number you redacted, see, **Bates 000181, 000037, 000043, 000258**) had tested positive for drug use and remained in general population, specifically in the same housing dorm as Plaintiff where Holtzman was the 7am through 3pm officer. Additionally, on July 15, 2016 when Plaintiff was taken to OCF's SHU-200 and placed in housing unit C-1-17T Plaintiff's cellmate, Inmate Ward who was housed in C-1-17B had recently tested positive for the same type of drug use as Plaintiff was alleged to have tested positive for. Yet, Inmate Ward was allowed to remain in general population until the completion of his hearing just like Inmate Hines, but Plaintiff was immediately placed in SHU confinement upon allegedly testing positive for drug use. As to you assertion "...Defendants do not know who Plaintiff's requested witness is..." This is far from the truth and your actions of false testimony is delaying discovery practice.

4. **Request No.9:** Because the information that Plaintiff's seeks is contained at OCF"s SHU-200 where Plaintiff was admitted to on July 15, 2016 (**Bates 000128**). You are advised to contract DOCCS' emploees, specifically Defendant Cogovan (OCF's SHU-200's area supervisor) to check the relevant logbooks, etc for July 15, 2016. Additionally, the relevancy of these requested documents/information is similar to that which has been wxplained above for **request no. 7**.

5. **Request No.13:** Specifically asked for a list of all inmates who had their urine tested by Donley on July 9, 2016 the sameday as Plaintiff. You decided that providing me with something I did not request was a sufficient response. Which was a list for the entire July 2016 (**Bates 000284**) of inmates who provided urine samples, spefically, your list was for July 5, 2016 (**Bates 000285-000286**) and July 8, 2016 (**Bates 000287**) all of which was tested by non-party Dixion. My request is for a list of all the inmates that Donley tested their urine samples for July 9, 2016.

<u>**Conclusion:**</u> Plaintiff will give you until August 31, 2017 or the first business day before August 31, 2017 if such date shall fall on a weekend.

Shawn Woodward