UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAWN WOODWARD,

                              Plaintiff,

        v.

CORRECTIONAL OFFICER HOLTZMAN,
SERGEANT E. RICE,
CORRECTIONAL OFFICER R.E. DONLEY,
MOFFIT,
SERGEANT J.S. COGOVAN,

                              Defendants.
_____

**DECISION
and
ORDER**

**16-CV-1023A(F)**


APPEARANCES:          SHAWN WOODWARD, *Pro Se*
                      00-A-6563
                      Lakeview Shock Incarceration Correctional Facility
                      Box T
                      Brocton, New York 14716

                      BARBARA D. UNDERWOOD
                      New York State Attorney General
                      Attorney for the Defendants
                      CHRISTOPHER L. BOYD,
                      Assistant Attorney General, of Counsel
                      Main Place Tower
                      350 Main Street, Suite 300
                      Buffalo, New York 14202


        In this prisoner civil rights action pursuant to U.S.C. § 1983, Plaintiff alleges First

and Fourteenth Amendment violations against Defendants arising from retaliation

against Plaintiff by Defendants Holtzman, Rice, Donley, and Cogovan for Plaintiff's filing

of grievances against Holtzman based on Holtzman refusing Plaintiff a bottom bunk

assignment while Plaintiff was housed at the Orleans Correctional Facility ("Orleans"),[1]

_____
[1]  The court takes judicial notice, and the parties do not dispute, that Orleans is operated by the New York State Department of Corrections and Community Supervision ("DOCCS").

during June – July 2016, subjecting Plaintiff to an unwarranted urinalysis testing resulting in a false positive test for marijuana (cannabis) administered by Defendant Donley, interrupting Plaintiff's participation in Ramadan congregate worship, various threats by Holtzman, Rice, Donley, and Cogovan relating to Plaintiff's filing complaints and grievances against Holtzman and Rice, a 90-day sentence in SHU with loss of privileges, denial of a sweatshirt belonging to  Plaintiff, library book cart and a cell-cleanup while in SHU, and two false misbehavior reports each filed by Defendant Donley and Defendant Cogovan against Plaintiff.  Plaintiff also alleges a due process violation against Defendant Moffit in connection with his disciplinary hearing for refusing Plaintiff's request to call witnesses.

Before the court is Plaintiff's motion to compel document production pursuant to Fed.R.Civ.P. 34(a)(1)(A), ("Rule 34(a)(1)(A)"), requested by Plaintiff's First Document Request served June 26, 2017 (Dkt. 15) ("Plaintiff's First Document Request") and Plaintiff's Second Document Request served August 28, 2017 (Dkt. 20) ("Plaintiff's Second Document Request"), filed January 29, 2018 (Dkt. 44) ("Plaintiff's motion to compel") and Plaintiff's motion, also filed January 29, 2018 (Dkt. 45), for a protective order and to amend the Second Amended Scheduling Order to enlarge the time for discovery.  Plaintiff's motion for a protective order seeks to prevent Defendants from seeking sanctions based on Plaintiff's supposed late responses to Defendants' discovery requests and to amend the Second Amended Scheduling Order.  Specifically, in moving to compel, Plaintiff requests various documents relating to Orleans prison administration including so-called cube/property inspection forms for the period May-June 2016, Dkt. 44 at 2, a copy of Plaintiff's SHU cell-mate's disciplinary records, a list

of inmates who were also given urine tests by Defendant Donley on July 9, 2016, when Plaintiff was tested, a Dorm E-1 Arrival List for May-June 2016, a copy of a special needs request for inmate Leroy Delanley,[2] a list of inmates housed in the Orleans SHU on July 9, 2016, a copy of Defendant Rice's investigative report involving Plaintiff for the June-July 2016 period, and copies of prior state and federal lawsuits in which Defendants are named as defendants. Plaintiff's request for a protective order is based on Defendants' assertion that Plaintiff failed to timely serve Plaintiff's responses to Defendants' Request for Document Production, served October 5, 2017 (Dkt. 27) ("Defendants' Document Production Request"), as well as Defendants' Interrogatories ("Defendants Interrogatories") and Requests for Admissions ("Defendants' Request for Admissions") served November 13 and 14, 2017, respectively (Dkt. 31). Specifically, Plaintiff contends Plaintiff served Plaintiff's responses by submitting them for mailing by prison officials at Livingston County Correctional Facility where Plaintiff then resided, which were received by Defendants on January 22, 2018. Plaintiff's request to amend the Second Amended Scheduling Order is predicated on the potential need to obtain the additional discovery sought by Plaintiff's motion to compel (Dkt. 44) for use in defending against Defendants' expected summary judgment motion. The First Amended Scheduling Order extended to December 20, 2017 the period for discovery (Dkt. 37); the Second Amended Scheduling Order enlarged the time to February 20, 2018 for motions to compel (Dkt. 43).

By letters dated August 16, 2017 (Dkt. 48-2) and August 23, 2017 (Dkt. 48-3) ("Plaintiff's August 2017 communications"), Plaintiff attempts to explain the basis for

---

[2]   As spelled by Plaintiff in Plaintiff's Second Document Request, Dkt. 20 ¶ 3; Defendants spell this inmate name as Delaney, Dkt. 48 at 10, as does Plaintiff in Plaintiff's Reply. *See* Dkt. 56 at 20 ¶ 7.

Plaintiff's belief that Defendants had failed to provide the documents requested by Plaintiff. In Defendants' response, Dkt. 48-4, dated August 25, 2017 ("Defendants' August 2017 communication"), Defendants explained that Defendants had provided all responsive documents that presently existed and were obtainable by Defendants. Defendants also requested Plaintiff provide clarification of Plaintiff's requests, such as the names of witnesses Plaintiff requested to testify at Plaintiff's disciplinary hearing and the date of a Tier III hearing for an unnamed inmate, and the name of the inmate, Dkt. 48-4 at 3, related to Plaintiff's Request Nos. 7 and 9 of Plaintiff's First Document Requests, and advised Plaintiff Defendants would provide additional records for the July 9, 2016 urine tests in further response to Plaintiff's Request No. 13, Dkt. 48-4 at 3. On August 29, 2017, Defendants responded (Dkt. 48-5) to Plaintiff's August 28, 2017 letter regarding copies of prior lawsuits against Defendants stating such information was not in Defendants' possession and is generally available to Plaintiff through requests to the appropriate courts.

In opposition to Plaintiff's motion to compel, Defendants argue Plaintiff failed to respond to Defendants' August 2017 communications explaining the non-existence of many of the requested documents, Dkt. 48-9 (Declaration of Orleans Captain Donald C. Clary explaining the Cube Inspection Form requested by Plaintiff no longer exists; that the Inmate Arrival List also no longer exists, that no list of SHU inmates for July 9, 2016, is maintained at Orleans, and Defendant Rice's investigation reports for July 2016, do not exist separate from the investigation of Plaintiff's grievance) ("Clary Declaration"); Dkt. 48-10 (Declaration of James O'Gorman that no documents responsive to Plaintiff's requests for a list of all SHU inmates on July 9, 2016, and names of Plaintiff's SHU cell-

mates presently exist) ("O'Gorman Declaration"), and Defendants' willingness to produce additional information upon receiving necessary clarification from Plaintiff as Defendants requested. *See* Dkt. 48-9. Defendants also assert that because of Plaintiff's lack of response to Defendants' requests for clarification of certain of Plaintiff's First Document Requests, Plaintiff failed to engage in a good-faith effort to avoid a motion to compel required by Fed.R.Civ.P. 37(a)(1) ("Rule 37(a)(1)"), and that Plaintiff's motion was otherwise frivolous. Dkt. 48 at 2. Plaintiff's Reply was filed March 26, 2018 (Dkt. 56 at 18-35) ("Plaintiff's Reply"). Defendants also contend Plaintiff failed to notify Defendants that some of Defendants' Responses to Plaintiff's Second Document Requests were unsatisfactory prior to filing Plaintiff's motion to compel to allow Defendants an opportunity to resolve the issue as Rule 37(a)(1) requires. Dkt. 48 at 7. Oral argument was deemed unnecessary.

**A.      Defendants' Request to Dismiss Plaintiff's Motion for Failure to Comply with Fed.R.Civ.P. 37(a)(1) and as Frivolous.**

Preliminarily, the court addresses Defendants' contention that Plaintiff's motion should be dismissed as frivolous and alternatively, based on Plaintiff's failure to comply with Rule 37(a)(1). Dkt. 48 at 2-3; 3-4. In response, Plaintiff asserts that, prior to the filing of Plaintiff's motion, the parties engaged in a good-faith effort to resolve the issues raised by Plaintiff's motion through correspondence. Dkt. 56 at 19 ¶ 2 ("Party [*sic*] went back and forth on the topic of disputed documents by exchanging letters"). *See* Dkt. 48-2 (Plaintiff's Letter of August 16, 2017 to Defendants "intended to avoid motion practice regarding [Defendants'] inadequate discovery responses"). The record nevertheless supports Defendants' contention that Plaintiff failed to respond to Defendant's requests for clarification of some of Plaintiff's First Set of Document Requests which may have

obviated, in part, the need for Plaintiff's motion.  *See* Declaration of Christopher L. Boyd

(Dkt. 58-1 ¶¶ 12-13).  Defendants are also correct that Plaintiff failed to correspond with

Defendants regarding alleged deficiencies in Defendants' response to Plaintiff's Second

Document Request.  The purpose of Rule 37(a)(1) is to avoid, wherever feasible,

unnecessary litigation of discovery disputes. *Vaigasi v. Solow Management Corp*, 2016

WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (plaintiff's failure to meet and confer with

defense counsel as Rule 37(a)(1) requires was, by itself, sufficient reason to deny the

plaintiff's motion to compel (citing cases)).  However, courts have discretion in

determining a moving party's compliance with Rule 37(a)(1) and generally accord some

leeway to *pro se* prisoner litigants in § 1983 cases.  *See Elhannon LLC v. F.A. Bartlett*

*Tree Expert Company*, 2017 WL 1382024, at *9 (D.Vt. Apr. 18, 2017 ("district courts

maintain discretion to waive the meet-and-confer required [of Rule 37(a)(1)]." (citing

cases)); *Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. 2003) (*pro se* litigants are

entitled to "some leeway" in complying with Federal Rules of Civil Procedure, but such

leeway does not extend to unexcused failures to comply with routine discovery

requests).  While Defendants contend Plaintiff, as an experienced *pro se* litigant, should

not be afforded such consideration, *see* Dkt. 48 at 4 (citing *Tracy v. Freshwater*, 623

F.3d 90, 102 (2d Cir. 2010), nevertheless in this case based on the nature of

Defendants' opposition that most of Plaintiff's requested documents in dispute cannot

be produced because they do not exist or because Defendants lack possession, it is

reasonably clear that further efforts by Plaintiff to resolve the dispute without motion

practice would be futile.  *See United States v. Acquest Transit LLC,* 319 F.R.D. 83, 89

(W.D.N.Y. 2017) (Rule 37(a)(1) meet-and-confer requirement does not apply where

records show such attempt would be futile).  In addition, Defendants' other contention

that Plaintiff's motion is frivolous based on Plaintiff's numerous other unsuccessful

motions in other cases brought by Plaintiff should be dismissed on this ground is without

merit.  A frivolous motion is one without an "arguable basis in law or fact."  *See Bonds v.*

*Daley*, 2018 WL. 2405903), at *2 (E.D.Ky. Feb. 21, 2018) (dismissing *pro se* plaintiff's

complaint and summary judgment motion as legally and factually contrary to evidence

constituting frivolous pleadings) (quoting *Neitzke v. Willilams*, 490 U.S. 319, 325

(1989)); *see also Pillco v. Sessions*, 718 Fed.Appx. 45, 48 (2d Cir. 2017) (summary

order) (petition for review lacked "an arguable basis in law or fact and is therefore

frivolous") (citing *Neitzke*, 490 U.S. at 325)).  Here, as is demonstrated by the extent of

analysis required to resolve Plaintiff's numerous contentions in support of Plaintiff's

motion, it cannot be said that Plaintiff's motion is entirely devoid of any arguable basis in

law or fact.  The court also notes Defendants fail to cite to any authority on point.  While

Defendants, perhaps understandably, find Plaintiff's motion unnecessarily litigious,

litigiousness in itself is not necessarily indicative of frivolousness.  Accordingly, the court

finds Defendants' request to dismiss Plaintiff's motion on these grounds to be without

merit and the court therefore turns to the merits of Plaintiff's requests.

**B.    Plaintiff's Motion to Compel.**

(1)    Cube/Property Inspection Form – (Plaintiff's First Document Request No. 4).[3]

In Plaintiff's Reply, Plaintiff contends the Clary Declaration averring that the

Cube/Property Inspection Form used by Defendant Holtzman for Plaintiff's Dorm

residence between May and June 2016, requested by Plaintiff's First Document

---

[3]  Plaintiff's Requests at issue are addressed in the order presented by Plaintiff's motion with
corresponding references to Plaintiff's First and Second Document Requests.

Request (Dkt. 15), is unavailable because such forms are disposed of when an inmate moves out of a cube, Dkt. 48-9 ¶ 3, was not asserted by Defendants in response to Plaintiff's request. Dkt. 56 at 21 ¶ 16.[4] Plaintiff also contends that the loss of such document constitutes a sanctionable spoliation given that several unnamed Orleans employees were then, according to Plaintiff, aware of Plaintiff's complaint against Holtzman for refusing Plaintiff' a bottom bunk assignment thereby imposing a document preservation obligation on Defendants. *Id.* at 21-22 ¶¶ 17-20 (citing *Holmes v. Fisher*, 2013 WL 1309157, at *4, (W.D.N.Y. Mar. 28, 2013) ("*Holmes*")). Plaintiff also argues the Clary Declaration is deficient as it does not state it was based on personal knowledge. *Id.* ¶ 21. Defendants did not request permission to submit a sur-reply and thus do not address these contentions. However, regardless of whether Defendants' response to this requested document should have included that the document was no longer available for production, it is well-established that a responding party cannot be required to produce a document which no longer exists. *See Shcherbakovskiy v. DaCapo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007); *Hallmark v. Cohen & Slamowitz*, 302 F.R.D. 295, 299 (W.D.N.Y. 2014) (citing authorities). Plaintiff's objection as stated in Plaintiff's Reply, Dkt. 56 at 21, arises from Defendants' Response to Plaintiff's First Request for Documents, Request No. 4, Dkt. 15 at 1 ¶ 4, which requested Cube Inspection Forms used by Defendant Holtzman between May and July 9, 2016. Defendants' Response, Dkt. 18 at 6, raised a lack of relevancy objection but

---

[4]  Plaintiff also filed on March 26, 2018, Plaintiff's Affidavit In Support of Reply to Defendants' Opposition that, as relevant, "[a]s to Plaintiff's discovery disputes they were either based on his misunderstanding/lack of understanding about the law and/or unintentional negligence." Dkt. 57 at ¶ 4. Whether by this statement Plaintiff may be understood to have withdrawn Plaintiff's motion, nevertheless, Plaintiff's Reply indicates Plaintiff intends to continue to pursue Plaintiff's motion to compel and offered a detailed rebuttal to Defendants' opposition to Plaintiff's motion to compel.

failed to assert that, as Captain Clary now avers, no such document that could be responsive presently exists. *See* Dkt. 48-9 ¶ 3. Notwithstanding the limited scope of Defendants' initial response, in Defendants' August 25, 2017 letter to Plaintiff regarding this request, Defendants also stated Defendants "will <u>again</u> ask whether any . . . such property inspection forms exist and may produce additional responsive documents, if any." Dkt. 48-4 at 2 (underlining added). Defendants further reiterated Defendants' relevancy objection to this Request. *Id.* at 3. Plaintiff's reliance on *Holmes* to support Plaintiff's assertion that Clary's representation that the so-called Cube Inspection Form was unavailable because of Defendants' alleged spoliation, *i.e.*, failure to preserve evidence, is misplaced.

"'The obligation to preserve evidence arises when the party has notice that <u>the evidence</u> is relevant to litigation or when a party should have known that <u>the </u>evidence may be relevant to litigation.'" *Holmes*, 2013 WL 1309157, at *4 (quoting *Fujitsu Ltd. v. Federal Exp. Corp.*, 24 F.3d 423, 436 (2d Cir. 2001) (underlining added)). Thus, Plaintiff's contention that the Clary Declaration should be disregarded because it was not previously provided to Plaintiff, Dkt. 21 at 35 ¶ 16, in Defendants' response to Plaintiff's Request No. 4, wrongly assumes the document previously existed but was lost by Defendants' failure to preserve it at a time Defendants should be charged with the knowledge Plaintiff was likely to sue Defendants over Plaintiff's instant claims and that this document would be relevant to Plaintiff's putative claims. Even presupposing Defendants should have anticipated that given Plaintiff's proclivity to sue over Plaintiff's instant claims (Plaintiff has an extensive history of § 1983 litigation), *see* Dkt. 48 at 3 (referencing Plaintiff's four pending or prior cases), Plaintiff was likely to commence an

action regarding Defendants' alleged retaliation conduct and alleged due process violation, this does not establish that the so-called Cube/Property Inspection Form in fact existed at that time.  In particular, according to Captain Clary, such forms may have existed while Plaintiff was housed in the Orleans E-1 dorm from later May until July 9, 2016 when Plaintiff was removed from his dorm to begin service of his disciplinary sentence in SHU following a positive urine test for drug use on the same date, however, Clary also avers that when an inmate leaves a housing unit the Cube Inspection Form which was maintained previously is routinely destroyed.  There can be, of course, no spoliation of a document that did not exist when the litigation to which it may constitute relevant evidence was first reasonably contemplated or commenced.  Plaintiff offers nothing to undermine Captain Clary's affirmative sworn negation that the requested document was, in accordance with the customary document retention practice at Orleans, immediately destroyed upon Plaintiff's departure from the E-1 Orleans dorm unit.  Thus, even assuming the Form could aid Plaintiff in showing that other inmates received bottom bunk assignments without a showing of need, *e.g.*, medical, impliedly supporting that Defendant Holtzman's refusal to give Plaintiff such an assignment was therefore retaliatory for Plaintiff's grievances against her, nevertheless it was routinely destroyed, six-months later, at a time well-prior to when the instant litigation was eventually commenced by Plaintiff on December 21, 2016, or could reasonably been contemplated by Defendants, when Plaintiff was transferred to SHU, about the retaliation issue in this case which was not necessarily expected by Defendants when the document no longer existed.  In short, Plaintiff' assertion that as to Plaintiff's Request, Defendants are guilty of spoliation cannot be sustained on this record.

Plaintiff's complaint that Captain Clary's declaration was not based on personal knowledge, Dkt. 56 at 21 ¶ 12, is equally without merit as given that Clary is a Captain at Orleans provides sufficient indicia that Clary's statements are in fact based on personal knowledge as to the facility's document retention policy. One does not rise to a captain's position in DOCCS without substantial experience in prison operations and policies. The record therefore demonstrates the Cube/Property Inspection document for production in response to Plaintiff's Request No. 4 does not exist and, as such, Plaintiff's motion as to this request should be DENIED.[5]

(2)     Plaintiff's July 9, 2016 SHU Cell-Mate's Disciplinary Records (Plaintiff's First Document Request No. 9).

This request could not be responded to by Defendants because, as Defendants stated, Defendants lacked the name of the cell-mate. Dkt. 48 at 9. Plaintiff asserts this information helps to establish that while the cell-mate who Plaintiff claimed incurred similar disciplinary (drug use) punishment was allowed to remain in the general population, Plaintiff was immediately given SHU time following the Plaintiff's positive urine test, thereby demonstrating Plaintiff was subjected to retaliation. (Dkt. 44 at 2). Plaintiff was requested by Defendants to provide the inmate's name, but Plaintiff failed to do so. Dkt. 48 at 9. Significantly, according to Captain Clary, no record regarding the identities of SHU inmates is maintained at Orleans. *See* Dkt. 48-9 ¶ 7. Courts cannot order production of a non-existent document. *See Shcherbakovskiy,* 490 F.3d at 138;

---

[5] As Plaintiff's spoliation contention was raised in Plaintiff's Reply, the court need not further consider it. *See Ruggiero v. Warner-Lambert Co.,* 424 F.3d 249, 252 (2d Cir. 2005) (district court has discretion to consider argument first made in reply memorandum of law on summary judgment). *See also ABC v. NYU Hospitals Center,* 629 Fed.Appx. 46, 49 (2d Cir. Oct. 22, 2015) ("Even if we set aside our rule against considering arguments first made in a reply brief, even by *pro se* litigants, [the plaintiff] gives us no reason to believe that the District Court 'abused its discretion' in managing discovery.").

*Hallmark,* 302 F.R.D. at 299.  Moreover, Plaintiff indicates that notwithstanding Plaintiff's request, Plaintiff is aware of the cell-mate's identity, *see* Dkt. 56 at 23 ¶¶ 22, 23 (referencing the inmate as "Inmate Ward," and "R. Ward"), and therefore can provide it to Defendants so Defendants can attempt to produce the requested record if Plaintiff so wishes.  Plaintiff's motion as to this request is therefore DENIED without prejudice.

(3)    List of Inmates Who Tested Drug Positive on July 9, 2016 (Plaintiff's First Document Request No. 13).

Plaintiff seeks this information to enable Plaintiff to establish that while such inmates also tested positive for illicit drug use allegedly similar to Plaintiff's drug use misconduct on July 9, 2016, Plaintiff, unlike these inmates, was immediately placed in SHU by Defendant Rice after being threatened by Rice for filing complaints against Holtzman, thus constituting further circumstantial evidence of retaliation against Plaintiff. Defendants provided a responsive document with redactions of the inmates' Departmental Identification Numbers ("DINs") pursuant to the requirement of DOCCS prison security policy regarding such inmate identification numbers.  Dkt. 48 at 9-10. Plaintiff has acquiesced in Defendants' redactions and therefore has withdrawn this issue on Plaintiff's motion.  *See* Dkt. 56 at 23-25 ¶ 25.  Accordingly, as to this request, Plaintiff's motion should be deemed WITHDRAWN.

(4)    Inmate Arrival List (Plaintiff's Second Document Request No. 1).

Plaintiff requests a so-called Orleans Inmate Arrival List for Plaintiff's E-1 Dorm during the period May-June 2016.  *See* Dkt 44 at 3.   While the relevance to Plaintiff's claims of this request is not clear from the record, Defendants' objection is based solely on the non-existence of the requested document.  Dkt. 48 at 10.  The court therefore finds Defendants conceded the relevancy of Plaintiff's request.  More specifically,

Defendants state the requested list does not presently exist for purposes of discovery in that the record is maintained in pencil with inmate names erased as inmates are moved in and out of the inmate's respective dorm. *Id; see also* Clary Declaration, Dkt. 48-9 ¶ 4 (attesting that the actual list requested by Plaintiff no longer exists and thus cannot be produced at this time). Plaintiff responds that Clary's assertion is not based on personal knowledge, Dkt. 56 ¶ 27, and appears, according to Plaintiff, inconsistent with a prior statement of Defendant Holtzman's describing the existence of the list. *See* Dkt. 56 ¶¶ 28, 29 (referencing a report prepared by Holtzman in September 2017 describing such a list). Specifically, Plaintiff complains that Holtzman's report fails to mention the use of pencil entries and erasures, a process described by Captain Clary, thus, in Plaintiff's view, casting doubt on the accuracy of Clary's statement. Dkt. 56 ¶ 29. Plaintiff also believes Defendants should have earlier (*e.g.* 2017) provided a declaration of Holtzman explaining the pencil entry and erasure system later described by Clary. *Id.* Plaintiff also asserts Defendants failed to preserve the requested documents which may support a spoliation sanction claim as to this document. Dkt. 56 ¶ 30. However, Plaintiff's various assertions nevertheless do not sufficiently rebut Defendants' concrete representation regarding the present non-existence of the requested list, and it is basic that production of a non-existent document cannot be compelled. *Shcherbakovskiy,* 490 F.3d at 138; *Hallmark*, 302 F.R.D. at 299. In any event, at base, Plaintiff's quarrel on this issue essentially raises a credibility issue which does not establish Plaintiff's belatedly asserted spoliation claim nor demonstrate that the court should not find Defendants' explanation a sufficient response.

(5)     Inmate Leroy Delaney's Special Needs Request (Plaintiff's Second Document
        Request No. 3).

Plaintiff requested Inmate Delaney's (spelled, as noted, *supra,* at 3 n. 2,

"Delanley" in Plaintiff's Second Document Product Request) special need request form

to assist Plaintiff in establishing Plaintiff's retaliation claim.  Plaintiff contends

Defendants' objection based on lack of relevancy and the confidential nature of the

requested document is without merit.  Specifically, Plaintiff believes the document will

show Defendants honored Delaney's request for a bottom bunk assignment without a

special need (Dkt. 56 ¶ 35) but denied such an assignment to Plaintiff based on an

alleged retaliatory motive caused by Plaintiff's earlier grievances and complaints against

unidentified corrections officers for removing Plaintiff from the Orleans mosque before

Plaintiff completed Ramadan religious exercises to undergo a urine drug test requested

by Holtzman.  Plaintiff also contends that although Defendants asserted Delaney's right

to confidentiality, Defendants failed to serve a privilege log, *see* Local R.Civ.P. 26(f)

(requiring privilege log where discovery refused based on an asserted privilege), and

have thus waived this objection.  Dkt. 44 at 3.  Plaintiff's reliance on Local R.Civ.P.

26(d) ("Rule 26(d)")[6] for the proposition that Defendants' failure to provide a privilege log

required by Local Rule 26(d) waives any reliance on inmate confidentiality is, however,

misplaced as the rule governs only objections based on "a privilege."  To justify

Defendants' refusal of Plaintiff's request, Defendants rely on the Health Insurance

Portability and Accountability Act of 1996, 42 U.S.C. § 1320d, *et seq.* ("HIPAA"); *see Pal

v. New York University*, 2007 WL 1522618, at *2 (S.D.N.Y. May 22, 2007) ("*Pal*") (Maas,

M.J.) ("Under HIPAA, health care providers are required to protect the confidentiality of

---

[6]   Plaintiff erroneously refers to this rule as Rule 26(f), *see* Dkt. 44 at 3.

a patient's health information.") (citing *Nat'l Abortion Fed'n v. Ashcroft*, 2004 WL 555701, at *3 (S.D.N.Y. Mar. 19, 2004)), for the proposition that Defendants are not permitted to disclose Delaney's confidential medical records, created by Orleans in connection with medical services provide to Delaney, absent Delaney's consent as required by HIPAA, which Defendants have no obligation, nor the ability to obtain, in order to comply with Plaintiff's request.[7] Dkt. 48 at 11. Plaintiff does not argue otherwise nor cite to any authority in support of Plaintiff's request for Delaney's medical records; Plaintiff also relies on *Pal* (albeit a prior superseded decision by Judge Maas), *see* Dkt. 56 at 26. While *Pal* does refer to HIPAA's patient medical record confidentiality requirement as a "privilege," *Pal*, 2007 WL 1522618, at **2-3, it is clear to the undersigned that such form of protection from discovery is not a privilege as that term is used in Local Rule 26(d) and under HIPAA, even assuming its confidentiality requirement is a statutorily created "privilege," it is one under the control of the patient, not Defendants or DOCCS as a medical service provider. *See Zyprexa Products Liability Litigation*, 254 F.R.D. 50, 53-54 (E.D.N.Y. 2008) (discussing HIPAA's confidentiality protection must, under certain circumstances, including a court order, yield in favor of disclosure). By definition an evidentiary privilege, as that term appears in Local Rule 26(d), is limited under federal law to privileges recognized by federal courts pursuant to Fed.R.Evid. 501 such as the attorney-client privilege or

---

[7] Defendants objected that Plaintiff requested "confidential medical" records, Dkt. 23 at 6; the objection did not specify such confidentiality was required by HIPAA, however, that HIPAA obliges health care providers to enforce such confidentiality is virtually common knowledge today. Thus, Plaintiff should have reasonably understood that Defendants were not asserting a recognized privilege for Defendants' refusal to provide the records requested by Plaintiff, but rather that under controlling federal law Defendants were prevented from doing so. Indeed, Defendants' failure to assert HIPAA's medical records confidentiality protection in opposition to Plaintiff's request could subject the individual responsible for production of the records Plaintiff requests to serious criminal penalties ranging from a $50,000 fine and one year of imprisonment to a $250,000 fine and a 10-year sentence. *See* 42 U.S.C. § 1320d-6(a)-(b).

psychotherapist-client privilege. That the HIPAA confidentiality protection is not an evidentiary privilege under Rule 501 and thus not the subject of Local Rule 26(d) is also evidenced by the fact that, in contrast to a judicially recognized privilege, HIPAA permits a non-consensual disclosure of a patient's medical record pursuant to a court order. *See Pal*, 2007 WL 1522618, at *3 (citing 45 C.F.R. § 164.512(e)(1)(i)). It is, of course, fundamental that once a privilege recognized under federal law attaches, absent a valid waiver by the holder of the privilege, no court order may set it aside to provide access to the records sought to be produced in pretrial discovery. *See University Sports Publications Co., Inc. v. Playmakers Media Co.*, 2011 WL 1143005, at *5 n. 4 (S.D.N.Y. Mar. 21, 2011) (noting court order cannot direct involuntary waiver of privilege). Therefore, Inmate Delaney's medical records, including his urine test at issue, and Defendants' failure to produce them, by asserting Delaney's HIPAA created confidentiality requirement, are not subject to the privilege log requirements of Local Rule 26(d). Even if the medical records protection of HIPAA is a privilege, it is, as discussed, *supra*, one held by the patient, not the record custodian, and subject to waiver only by the patient. In short, unless Plaintiff obtains Delaney's consent, one compliant with HIPAA, allowing Defendants to respond to Plaintiff's request without violating HIPAA, Defendants are unable to respond to Plaintiff's request. Moreover, Defendants' HIPAA grounded objection, based on the confidential status of Delaney's medical records, provides Plaintiff with insufficient notice of the basis of Defendants' objection and, as such, serves as the functional equivalent of a privilege log even assuming, for the sake of analysis, that Defendant's HIPAA-based objection is an asserted privilege for the purposes of Local Rule 26(d). *See Steuben Foods, Inc. v.*

*Gea Process Engineering, Inc.*, 2015 WL 9480186, at *2 (W.D.N.Y. Dec. 28, 2015)

(citing *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 594 (W.D.N.Y. 1996)

(purpose of Fed.R.Civ.P. 26(b)(5)(A) (requiring service of a privilege log where

objections to discovery requests are predicated on asserted privileges and Local Rule

Civ.P. 26(d) is to provide a requesting party with sufficient information to "permit the

court or opposing counsel to determine whether the privilege asserted applies")). Here,

Defendants' asserted reliance on HIPAA's medical records confidentiality rule as an

objection enables Plaintiff "to determine whether the privilege applies," *id.* at *2, thus

satisfying the objective of Local Rule 26(d) assuming it applies. Accordingly, as to this

request, even conceding its potential relevance, Plaintiff's motion should be DENIED.

(6)   <u>List of Inmates Placed in Orleans' SHU on July 9, 2016 (Plaintiff's Second
      Document Request No. 4)</u>.

In this request, Plaintiff seeks the names and DINS of other inmates serving

sentences in the Orleans SHU inmates on July 9, 2016, when Plaintiff was assigned to

the Orleans SHU on account of Plaintiff's positive urine drug test. Plaintiff argues that

such information will assist Plaintiff in establishing his immediate assignment to the

SHU following Plaintiff's positive urine drug test resulted from Defendants' retaliation,

not Plaintiff's prohibited drug use. Dkt. 44 at 4. While Plaintiff's logic to demonstrate

the relevancy, *i.e.*, probative value of this request, is unclear, *see, id.*, Defendants

contend the requested list is not maintained at Orleans and would require DOCCS

central office staff to create such a list from required reports of individual inmate SHU

assignments at Orleans. Dkt. 48 at 11 (referencing O'Gorman Declaration ¶ 4 at 1). As

noted, a requested party has no obligation to create a document that does not exist.

*Shcherbakovskiy,* 490 F.3d at 138; *Hallmark*, 302 F.R.D. at 299.[8]  Plaintiff argues in

reply he is only requesting specific names and DINS for SHU inmates on July 9, 2016,

not a "document" or list; however, despite Plaintiff's present assertion and the

immaterial nature of Plaintiff's distinction between a series of names and a "list," as

argued in Plaintiff's Reply, in his Second Document Request Plaintiff specifically states

his request is for a "list," *see* Dkt. 20 ¶ 4; Dkt. 44 at 3.  Accordingly, Defendants'

understanding that Plaintiff's Request No. 4 sought a non-existent document was

reasonable.  Under Fed.R.Civ.P. 26(b)(1) the relevance of a discovery request also

requires that the request be "proportional to needs of the case" based on "the amount in

controversy, the parties' relative access to relevant information, the parties' resources,

the importance of the discovery in resolving issues, and whether the burden or expense

of the proposed discovery outweighs its likely benefit."[9]  Here, assuming the fact at

issue, *i.e.*, whether the Orleans SHU was fully occupied on July 9, 2016, including with

other inmates who had tested positive the same day would, as Plaintiff asserts, be

supportive of Plaintiff's allegations, the court fails to see how the marginal probative

value of this information (even if available) is outweighed by the administrative

inconvenience and expense necessary to comply with Plaintiff's request that would

---

[8]   Defendants do not object on the ground that Defendants, through the Attorney General, could not request and thus obtain the list from DOCCS's central office.

[9]   Although Defendants do not explicitly rely on Rule 26(b)(1)'s proportionality requirement, courts have an independent duty to assess whether a disputed discovery request does so.  *See Armstrong Pump, Inc v. Hartman*, 2016 WL 7208753, at *3 (W.D.N.Y. Dec. 13, 2016) (recognizing duty of court to enforce recently amended version of Fed.R.Civ.P. 26(b)(1) regarding the required a threshold showing of proportionality as a prerequisite to discovery even without objection to discovery on this ground by responding party) (citing authorities); *Woodward v. Afify*, 2017 WL 279555, at *2 (W.D.N.Y. Jan. 23, 2017) (court expected to emphasize proportionality requirements in determination of discovery disputes).  *See also* Baicker-McKee, Janssen, Corr, FEDERAL CIVIL RULES HANDBOOK (Thomson Reuters 2018) at 764 ("some courts hold that they have affirmative duty to assess proportionality even if parties do not raise it") (citing caselaw).

result if Defendants were required to obtain such a list or record through special processing by DOCCS's central office. For example, that the SHU had no other inmates then housed there because of positive drug tests on July 9, 2016, could also be attributable to the fact that there were other inmates assigned to SHU at that particular time for other than drug violations thus filling the SHU to capacity such that other inmates, if any, as drug violators were required to wait for an empty SHU cell before commencing their own SHU sentences. In that circumstance, that Plaintiff, but not other drug violators on July 9, 2016, were immediately assigned to SHU at that time, supports only a highly speculative inference that the substantial motive for doing so was improper retaliation against Plaintiff because of Plaintiff's prior grievances and complaints against Defendant Holtzman and other non-party Orleans corrections officers. Accordingly, as the document Plaintiff's Request No. 4 seeks is not available and its creation fails to meet Rule 26(b)(1)'s proportionality requirement, Plaintiff's request should be DENIED.

(7)     Defendant Rice's Investigational Report (Plaintiff's Second Document Request No. 9).

Plaintiff seeks this document for the period June-July 2016 to demonstrate Defendants acted in a retaliatory manner against Plaintiff for filing prior grievances and complaints. Dkt. 44 at 4. Plaintiff apparently believes this document will show Defendant Rice had no basis to order Plaintiff's urine test other than a desire to retaliate against Plaintiff because of Plaintiff's complaint against Holtzman. *Id.* Defendants do not object based a lack of relevancy, rather, Defendants again assert such a responsive document does not exist. Dkt. 48 at 11 (referencing Clary Declaration ¶ 8 (stating there are no investigative reports at Orleans prepared by Defendant Rice other than grievance investigations which have been provided to Plaintiff)). As previously noted,

*supra*, at 8, 12, 13, non-existent documents are not subject to document production requests pursuant to Rule 34(a)(1)(A), *Shcherbakovskiy,* 490 F.3d at 138; *Hallmark*, 302 F.R.D. at 299.  Plaintiff's attempt to demonstrate, despite Defendants' denial, the existence of responsive documents because Rice stated there was then an on-going investigation of Plaintiff for suspected drug use (Dkt. 56 at 28 ¶ 45-46), fails.  It is not necessarily the fact that because there was an "investigation" that the investigator, *i.e.*, Rice, prepared and filed a report about the investigation.  Plaintiff may be dissatisfied with Defendants' response but a requesting party cannot dictate a response completely satisfactory to the requesting party.  *See Edwards v. U.S. Dept. of Agr.,* 2006 WL 839441, at *2 (W.D.N.Y. Mar. 29, 2006) (holding the court is without power to compel further responses based solely on the requesting party's dissatisfaction with responses received).  Accordingly, Plaintiff's motion as to this request should be DENIED.

(8)     <u>Federal and State Lawsuits Involving Defendants (Plaintiff's First Document Request No. 8)</u>.

Plaintiff seeks "any past state/federal lawsuits" in which Defendants are named as defendants, Dkt. 44 at 4, as well as corresponding docket case numbers.  Dkt. 44 at 5.  Defendants object that these requests seek documents which Defendants do not possess and rely on *Woodward*, 2017 WL 279555, at **2-3 (denying Plaintiff's request for copies of court filed documents in docketed federal and state court lawsuits against defendants raising claims, similar to those asserted in Plaintiff's current lawsuit, based on defendants' lack of possession and the ability of plaintiff to obtain copies of such documents through requests to the respective court clerks).  As with Plaintiff's other requests, a responding party is not required to produce documents not in the party's possession or which it cannot readily obtain.  *Woodward*, 2017 WL 279555, at *3 (citing

*Shcherbakovskiy,* 490 F.3d at 138 and other caselaw); *Hallmark*, 302 F.R.D. at 299.

This limitation on Rule 34(a)(1)(A) requests extends to publicly available court filed

pleadings and other related litigation documents on file with the respective courts.

*Woodward*, 2017 WL 279555, at *3. In Plaintiff's Reply, Plaintiff contends that because

Defendants are represented by the New York Attorney General, Defendants, through

the New York Attorney General, can search the litigation files which Plaintiff assumes

remain held by that office, to identify and produce copies of responsive records, *i.e.*,

prior state and federal lawsuits in which Defendants are named as defendants and were

represented by the Attorney General.  Dkt. 56 at 29 ¶ 50.  Generally, courts are not

required to consider arguments first raised in a reply.  *Ruggerio*, 424F.3d at 252 (district

court has discretion to consider arguments made for first time in reply memorandum).

Nevertheless, the court will address Plaintiff's contention.

     Although courts have required production of documents in the custody of

responding party's former attorney, *see Gruss v. Zwirn,* 296 F.R.D. 224, 230 (S.D.N.Y.

2013) (holding "control" of documents, for purposes of production in response to

discovery request, does not require legal ownership or physical possession, but only

that the requested party have the right, authority, or practical ability to obtain the

documents at issue, including from party's former outside counsel), such holdings are

based on the notion that as a former client, the responding party has, based on the

attorney-client relationship, the right to obtain access (subject to a charging lien) to the

former attorney's client files such that the file can be produced by the client in response

to a discovery request in a subsequent litigation.  However, Plaintiff points to no

authority supporting that a DOCCS employee represented by the New York Attorney

General, who, as a public duty, represents defendants in § 1983 cases such as the instant case, not on the basis of a private financial engagement as is the case with private sector defendants using private counsel, but as a matter of statutory requirement to represent state employees like Defendants, *see* N.Y Pub. Officers Law § 17(1)(a)-(b) (state employees to be defended by Attorney General in any state or federal court against such employee for any act or omission and are eligible to be indemnified against recovery of damages); N.Y. Exec. Law § 63(1) (Attorney General shall defend "all actions and proceedings in which the state is interested"), has any such comparable legal authority with respect to litigation files created by and in the possession and custody of the Attorney General  so as to require their production pursuant to Rule 34(a)(1)(A) in subsequent litigation.  Unlike the client-attorney relationship that obtains in the private, non-public, sector, one based on a bi-lateral contract such as a retainer agreement, for legal services and representation, representation of Defendants by the Attorney General in this case is a matter of a legislatively conferred benefit, not a private contract, granting to the represented state employees no authority with respect to obtaining the litigation files created by that office in providing such representation, assuming their continued existence.  *See Gruss,* 296 F.R.D. at 230; *Brown v. United States*, 179 F.R.D. 101, 106 (W.D.N.Y. 1998) (observing plaintiffs had been ordered to cooperate with their attorneys in state actions to facilitate discovery sought by defendants in the instant federal action).   Accordingly, the court finds Plaintiff's novel theory to be without merit, and Plaintiff's motion as to this request should be DENIED.

**C.**    **Plaintiff's Motion for a Protective Order and an Amended Scheduling Order**.

Pursuant to Fed.R.Civ.P. 26(c) ("Rule 26(c)") a party may request that the court

prohibit or limit, as applicable to Plaintiff's motion in this case, discovery. A certification that the parties have attempt in good faith to resolve the dispute without court intervention and a showing of good cause is required. Fed.R.Civ.P. 26(c)(a). The court has broad discretion to determine whether good cause has been shown. *Loussier v. Universal Music Group, Inc.*, 214 F.R.D. 174, 177 (S.D.N.Y. 2003) (citing cases). Upon showing of good cause, the court may limit or direct discovery to proceed and terms and conditions on taking of discovery in the case. Fed.R.Civ.P. 26(c)(1)(A), (B); *Hasbrouck v. BankAmerica Housing Services*, 187 F.R.D. 453, 455-56 (N.D.N.Y. 1999) (citing caselaw). The party requesting a protective order has the burden to establish good cause for such an order. *See Gulf Oil v. Bernard*, 452 U.S. 89, 102 (1984); *In re Grand Jury Subpoenas Dated March 19, 2002 and Aug. 2, 2002*, 318 F.R.D. 379, 384 (2d Cir. 2003).

Here, Plaintiff asserts Defendants intend to move to compel Plaintiff's responses to Defendants' Interrogatories, Requests for Admissions, and Document Production Requests. Dkt. 45 at 2.[10] More specifically, Plaintiff contends Plaintiff has timely served Plaintiff's answers to Defendants' Interrogatories and Plaintiff's responses to Defendants' Request for Admissions. *Id.* Plaintiff also contends Defendants should not be permitted to compel Plaintiff's responses to Defendants' Document Production Requests as Plaintiff informed Defendants at Plaintiff's deposition on November 14, 2017, that Plaintiff had no responsive documents other than those Defendants previously provided to Plaintiff, and that any motion to compel such responses is unnecessary and intended to unnecessarily burden Plaintiff. *Id.* In opposition,

---

[10] Defendants' motion to compel was filed February 21, 2018 (Dkt. 49).

Defendants contend that Plaintiff failed to engage in a good faith effort to avoid

Plaintiff's motion as required by Rule 26(c)(1), Dkt. 48 at 12, and that Plaintiff

acknowledged at his deposition that Defendants required a formal response to

Defendants' document requests despite Plaintiff's verbal assertion that Plaintiff lacked

any responsive material other than those previously provided by Defendants. *Id.*

Defendants further point to the fact that Defendants informed Plaintiff in writing prior to

Plaintiff's filing the instant motion that Plaintiff's formal response to Defendants'

Document Production Requests would be required. Dkt. 48 at 13. Defendants also

note that because Defendants received Plaintiff's responses to Defendants' Request for

Admissions on January 22, 2018, Dkt. 28 at 13, and do not intend to seek sanctions

based on such an insubstantial violation of the extension of time for service of Plaintiff's

responses permitted by the court's order granting Plaintiff's motion for the extension,

Dkt. 26, Plaintiff's motion is also moot. *Id.* In Plaintiff's Reply, Plaintiff concedes

Plaintiff's motion is, based on Defendants' response, moot. Dkt. 56 at 29-30. The court

agrees with Defendants' position on Plaintiff's request, and accordingly, Plaintiff's

motion for a protective order should be DISMISSED as moot.

With respect to Plaintiff's request for an amended scheduling order, Plaintiff's

requests the court extend the period for completion of discovery to allow for the

possibility that in the event Plaintiff's motion to compel several documents Defendants

claim do not exist is successful that enlarging the period for discovery would then

accommodate such additional production. Dkt. 45 at 2-3 ¶¶ 8, 9. In response,

Defendants maintain the court entered a Second Amended Scheduling Order on

January 29, 2018 (Dkt. 43), and Defendants have no objection to a further amended

scheduling order to defer dispositive motions filing until after Plaintiff's and Defendants' respective motions to compel are resolved. Dkt. 48 at 15. In Plaintiff's reply, Plaintiff nevertheless requests enlarging the discovery period to June 16, 2018. Dkt. 56 at 30. Here, at the parties' request, the court has separately entered a Fifth Amended Scheduling Order, Dkt. 68, providing that dispositive motions may be filed within 14 days following disposition of the parties' pending motions to compel.[11] Accordingly, Plaintiff's motion for a further amended scheduling order should be DISMISSED as moot.

## CONCLUSION

Based on the foregoing, Plaintiff's motion to compel (Dkt. 44) is DENIED in part, deemed WITHDRAWN in part, and DISMISSED as moot in part; Plaintiff's motions for a protective order and to amend the Second Amended Scheduling Order (Dkt. 45) is DISMISSED as moot.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  October 18, 2018
       Buffalo, New York

ANY APPEAL OF THIS DECISION AND ORDER MUST BE TAKEN BY FILING WRITTEN OBJECTION WITH THE CLERK OF COURT **NOT LATER THAN 14 DAYS** AFTER SERVICE OF THIS DECISION AND ORDER IN ACCORDANCE WITH FED.R.CIV.P. 72(a).

---

[11]  A Sixth Amended Scheduling Order will be filed to enlarge the period for dispositive motions by an additional 30 days to accommodate the additional discovery to be provided by Plaintiff pursuant to the court's determination of Defendants' motion to compel.